At this time, we'll hear FIH v. Emlinger. Good morning, Your Honors. How are you? May it please the Court, Sam Lieberman of Sedis and Goldberg on behalf of Appellant FIH, LLC. Your Honors, we're here, the primary thrust of the appeal are two points, which is that the Court below erred in holding that it was unreasonable as a matter of law for FIH to rely on key misrepresentations that induced it to enter two subscription agreements based solely on, one, a finding of sophistication and a general merger clause in a different LLC agreement. That involved different subject matter and different parties. And the Court also did entirely fail to address our peculiar knowledge argument. Now, let's go right to the subscription agreement and the merger clause because there are important points we want to highlight here, which are, one, if you go to A589, the subscription agreement, there is no merger clause in that agreement. So what the Court below pointed to instead, so you go to 589, there's nothing there. There's no merger clause there. But if you go instead, the Court pointed to, oh, there's an attachment here. There is a membership agreement. An LLC operating agreement was attached. And at page, in the back of that, at A637 of the record, there's a merger clause, which says, this capital agreement constitutes the entire agreement of the members and supersedes all prior agreements among the members with respect to the subject matter. Now, this agreement is capitalized because if you go to A. And what is the subject matter of that agreement? Yeah, the subject matter of an LLC operating agreement are post-investment, the internal operations of the firm. What are the rights and responsibilities of each member to each other? And the actual named party, the issuer of the securities here, which is foundation managing member, which changed to foundation capital partners, is not a member of the membership agreement. So the LLC agreement does not set forth the terms under which you purchase securities. That's a separate subscription agreement. Now, the point is, though, what I wanted to get to, Judge Jacobs, is that here, they pointed to this agreement is defined as the second amended and restated limited liability company agreement. So their position is these agreements were done at the same time with a view of the same transaction, yet the definition of the agreement was just the LLC agreement. That is very important here because it shows they didn't intend to include the subscription agreement in what was locked out in the merger clause. The merger clause is also, I mean, it is just a merger clause. That is, it says there's no prior agreements, and the prior agreements don't count. It's not really a disclaimer clause, is it? It doesn't say no warranties or representations have been made in connection with getting people to enter into this. That's exactly right, Judge Lynch. And I think that's the point from Danan, Harsco, and in ATSI, where the decision pointed to a clause that was actually much more significant in that it talked about promises, warranties, and the agreement. So there is no disclaimer here, and the origins of this rule of locking people out is to say where you not only have a merger clause but have specific disclaimers, this is a sign that the parties, through freedom of contract, have disclaimed representations of reliance. We don't have that here. There's some ambiguity in our case law, though, isn't there? I mean, there are some cases that do seem to make a distinction between merger clauses and disclaimer clauses. There are cases that say general disclaimer clauses aren't good enough. But then in ATSI, there is something of a somewhat different formulation of the rule that puts more emphasis on, I guess, a question I would ask you, which is if these representations were so important to a sophisticated investor, why— Your client could have negotiated to have those representations included in the agreement and warranted as part of the agreement, right? And that's kind of the emphasis that ATSI puts. Yes. I mean, look, there is some tension in the case law, and I believe that's why, being fair to the court below, there's a little ambiguity making it a little harder for judges. But I think the facts of ATSI distinguish it, but to the point of they could have negotiated for it. It's not a situation here where there was a direct negotiation of whether to include this term or not, and the representation was rejected. In fact, the representation of this being in active negotiations, that there were active negotiations for certain deals, are actually in the disclosure document, the offering memo, that usually come with subscription agreements. And they actually came here. And so the fact that it's actually in the discussion documents and the due diligence material shows it's part of the negotiation. So then the question is, what are you putting on investors? They have to actually—I've been shown this representation. Now I have to draw my contract that way? I don't think that's really the way— Are there any representations of any kind or warranties, either disclaimers or affirmative warranties and representations in the subscription agreement? The subscription agreement has two—well, there are two subscription agreements, by the way. They omit the second one, which is important because there's a whereas clause they rely on that's not in the second agreement. So the subscription agreement has two, yes. It has, here's our salary, and it's important to note they say that we were just hoping a dream. Their salaries are pretty high here. So there's a—here's our salaries, and then there is a representation that this is our membership agreement. And look, it was one representation, but there are costs in negotiating every part of the deal. I do, too. I mean, when—I mean, it seems to me that there's a plausible argument here that the subscription agreement and the partnership agreement are about the same subject and they should be interpreted together. To say they should be interpreted together does not say necessarily that a clause should be rewritten as if it says something different than what it says. And the clause in the partnership agreement seems to be, as you made the point earlier, specific to the LLC agreement. Exactly, Judge Lynch. And its incorporation by reference is sort of very specific. It is this representation in the subscription agreement that this is what the LLC agreement says, and then it's attached for that purpose. That strikes me as a little bit different than, at least, than just two agreements at the same time and one has a merger clause and the other doesn't. Exactly. And the membership agreement, in fact—Judge Lynch, that's a very good point. The membership agreement, in fact, was originally written in 2012, two years before the subscription. They amended the membership agreement to add our clients as members. So these aren't exactly two agreements entirely negotiated at the same time. And the point is, your logic that you're pointing out is exactly what then-Vice Chancellor and now Chief Justice Strine said in the Gildor case, where he said, when you have the merger clause, it means you intend clearly to say the other agreement's not part of this agreement. It's also what the Williston Treatise says when it says this rule of contract interpretation, when you have two agreements together, means they're read consistently. But it does not incorporate the provisions bodily into another. So that is where Delaware is. And it's a Delaware choice of law provision in which we also say it's not just the Kiola case that has some tension with emergent and ATSI. It's also, you've got to look at what Delaware says about their agreements. And they say it doesn't disclaim reliance on a general merger clause. But it's also that Delaware adopted the Williston point that you just made, Judge Lynch. I'm not sure that emergent is actually in so much tension. The district court made, now this is the district court, not us. But the district court in emergent sharply distinguished between a merger clause and a disclaimer clause and relied on the disclaimer clause. And it's not clear to me that our opinion sort of revives the idea of the merger clause as being significant in this respect. That's right. I mean, the truth is when you look at the facts, there isn't really tension there at all. Because, yes, Judge Sweet noted there were 29 extensive factual representations in emergent about finances and operations of the company. But they left out the rep about the Bright Street investment that they then sued on. It's like an expressio unius point. If you have all these reps and then you leave out another, seems to me you didn't intend to rely on Bright Street. And our point is that that's the way those cases should be read, that there really isn't tension. Yes, cases are fact sensitive and you have to look through them. But in no court has this court turned the Dinan rule on its head to say, no, we're back to merger clauses that lock people out. It's a fundamental principle of contract law that the merger clause itself is under challenge when you have a fraudulent inducement claim. And that's why you need specific disclaimers. And I don't believe any of the case law here has said any different. And that's my problem with the ruling below, which is that I believe the court over read these other cases. And then took a pretty aggressive decision instead of weighing all the factors, but just looking at that, so. We'll hear you in rebuttal. Thank you very much. Good morning, your honors. May it please the court, David Trachtenberg for defendant respondent Joseph Elminger and the counsel for other respondents Bar Mian Ward have asked me to address common issues. As the court knows, this case involves a highly sophisticated investor investing into a highly speculative, high risk, potentially high reward investment into a hedge fund that was set up to develop a fund to invest in the general partners of other hedge funds. How are they supposed to know that two of the partners were at such odds because of a divorce that they no longer could work with each other? How was the investor supposed to know about that? Well, the record reflects the fact that the investor was well aware before he invested that there was a divorce going on between Mr. Barr and his wife and that Mr. Mian was related by marriage, was the brother-in-law. In fact, the record reflects they couldn't work with each other. There were e-mails that they were exchanging, private e-mails that they were exchanging. We can no longer work with each other. How is the investor supposed to know that the wheels are coming off this business? The investor knew enough to protect himself by putting a representation into the integrated subscription agreement. And that's to ask. And he was told, no problem. These guys can get along. That's fine. We can get along. We can where this business is fine. And meanwhile, virtually contemporaneously, Barr is e-mailing Mian that they can't work together. And, in fact, that he's coming apart himself and is probably going to declare bankruptcy and probably has to withdraw from this whole arrangement. Well, Judge Lynch, that's exactly the point here, I think. Because it's what they knew that brings this case into the rule of emergent and at-sea communications. But the point is that . . . But emergent had twenty-nine reps and warranties, right? So they listed all these things that they said that there were representations and warranties that were made. Here, you don't have anything like that. Here, you've got a kaola situation, don't you? You've got a situation where there aren't any reps and warranties. And, therefore, kaola, which is still good law, should govern, right? Respectfully note, Your Honor, kaola is about disclaimers. Kaola does not challenge the rule of emergent and at-sea communications. The point in at-sea communications is that if an investor is in a position to protect himself by including a representation about the issue that he's relying on in the transaction documents, the investor is required to do so. And that rule is important precisely for a case like this where the business people knew more than enough to include a representation in the transaction documents about the subject. Your Honor's talking about the Bar-Mian relationship, so I'll talk about that one and then talk about the alleged misrepresentation in the pipeline . . . about the pipeline. The investor knew that these people were at odds. Before the investor invested, the record reflects the fact that . . . The question is not whether they were at odds, and the question is not whether there was a divorce. The question is whether they could work together. Well, that's right, Judge. I mean, I didn't even know as a practicing lawyer how one would draft a representation and warranty that a divorce is not going to come between two people or that they were not at sorts point. And in any event, you're relying on a merger clause to assure that, and the merger clause appears in a document. It's attached, and it ought to be read together, no doubt, but that document is talking about the governance. It is not a representation concerning the terms on which the relationship would be entered into. And you need a merger clause, because you don't want anybody down the road saying, I have a right to appoint an additional director, or there will be no more meetings of the trustees. I mean, you need to have a merger clause in such a document, and it assures the understanding that people know how this business is going to be governed. It doesn't say very much about representations that would induce entering into that relationship. Judge Jacobs, I think the point here, as in the ATSI communications decision in which Your Honor was on the panel, is that the investor could protect himself, or in this case could protect itself, by including a representation about the subject that it was concerned about. And to be sure, in a commercial deal, it would be more normal to put in a representation about the pipeline, for instance, and about whether or not there was reliance on the so-called pipeline statement here. But there's no reason why these people could not have put in, indeed there was every reason why they should have put in, a representation respecting the subject that they knew was critical to this deal. There were two points that were critical to the success of this venture. One was whether the pipeline would succeed. Everyone knew that these two representations were critical to the deal, right? Yes. And there were misrepresentations. Well, the allegation is that there were misrepresentations. That basically suggests that there was fraud in the inducement. Your Honor, we're not arguing that a merger clause prevents an investor from coming along later and saying there was fraud in the inducement. We're arguing that once you overcome the hurdle of whether you're allowed to plead fraud in the inducement, notwithstanding a merger clause, you have to comply with the rules created by this Court for proving reasonable reliance. And one of those rules is that if you are a sophisticated investor and you sign an agreement, an integrated agreement, that is if your transaction agreement is an integrated agreement, that you must protect yourself in order to ensure that you will be able to establish reasonable reliance later. And the way you protect yourself is by putting a representation into the agreement to protect yourself. These people knew how to put representations and warranties into the agreement. These people took advantage of the fact that they knew that Foundation was in trouble. They knew Foundation had been in business for years without succeeding. They knew Foundation had spent millions of dollars without succeeding, that it was in a cash crunch, and that other investors were bailing. They knew about this. They took advantage of those facts to negotiate good terms for themselves and to insist on a salary cap for the principals and to insist on supermajority rights and future entities' rights and tag-along and involuntary transfer to spouse rights. They knew how to put what they cared about into the agreement. Those are conditions, though. Those are not reps and warranties, right? Those are provisions. That's a completely different thing than the reps and warranties that you're talking about. Respectfully, Judge, I think that the provision about salary caps that was put into the subscription agreement was a warranty that was intended to protect these investors about what they cared about. It's an undertaking about the future. They're agreeing that these will be their salaries. That's a little different than making a representation about the pipeline. I think for these purposes, we have to take it as true that these were misrepresentations, was that we've got all these advanced deals in the works and all these negotiations going on, and it turns out that there weren't. Well, that's the allegation, Your Honor. But for these purposes, we have to assume that's true. Agreed, Your Honor. For these purposes, we do. And the lower court determined, Judge Arditan of the District Court in Connecticut, determined that since these people were sophisticated and since they knew how to put protections for themselves into the transaction documents, they would be held to the requirements of the emerging case and of the ATSI communications case. Before you sit down, there's one last thing I want you to address, and that is this. We've been assuming that the merger clause applies, but the merger clause is not in the subscription agreement. It's in the LLC agreement. Why does that merger clause in the LLC agreement mean what you say it means in the subscription agreement? It's a merger clause in the LLC agreement. Why is it also a merger clause in the subscription agreement? Because the subscription agreement and the LLC agreement have to be read together, and the reason they have to be read together is because you can't have one without the other. You cannot be an investor in a foundation unless you subscribe, and you can't be an investor unless you sign the LLC agreement. I quite agree with that, but whether you read them together or you read them separately, what the merger clause says, what it says is merged, are prior versions of the subscription agreement, not anything, prior versions of the LLC agreement, not anything about the subscription agreement or all of our agreements are unified and this combination of documents represents the entire deal. It's nothing like that. But respectfully, Your Honor, where the authorities provide that if the contracts were, where agreements are about the same subject matter and they become effective at the same time, they amount to a single agreement. They amount to a single agreement, but the clause in the agreement doesn't say anything about merging other documents or about representations or warranties. The clause itself is limited to the four corners of the LLC agreement, isn't it? Well, Judge, I hear your distinction, but where there is a single agreement, we respectfully maintain that that merger clause applies to all aspects of that agreement. And in order to just illustrate the point, Your Honor, the subscription agreement by itself is a meaningless document. The subscription agreement by itself doesn't even tell us how much money is being invested or what percentage of the LLC the investor is obtaining. And that agreement is so short, we maintain precisely because the parties understood that the deal terms were in the document that is attached and that is described in the, or that says effectively that we're investing in foundation on the terms and subject to the conditions in the company agreement which is attached. I mean, as I think Judge Jacobs observed earlier, the two have to be read together. Thank you. Thank you. A quick rebuttal. Yeah. A quick rebuttal on the terms and conditions phraseology he just read. That's from a whereas clause on the subscription agreement, the first one. It's not in the second one, first of all. Second of all, what that statement actually says is we are subscribing the agreement for a membership interest on the terms and conditions set forth in the LLC agreement. That whereas clause is referring to the membership interest, yes, is on the terms and conditions of the LLC agreement. That says what the LLC agreement terms are. The whereas clause is not in the second one. Could you clarify for me the difference between the first and the second? Is one preceded by the other or are they about, they're about different investments, aren't they? Yeah, they're different investments in two different times. I think there was a $4 million and then about a $2.75 million second round. And they've pointed to a whereas clause in the first one. There's no operable provision in the subscription agreement that says the subscription is under the terms set forth in the LLC agreement. Not a single operative clause. And we've pointed to Abraham Zion, which says that a whereas clause is not operable and also a whereas clause referencing another agreement is not enough to incorporate that agreement. What you need to do when you incorporate agreement is you actually have to have some clear language incorporating it. Now, he pointed to the rule about agreements that were done at the same time. And all of the cases that they've pointed to, either like this is me in TVT. They did not involve a merger clause in either document. And in this is me, this court said, were there a merger clause in one of the documents? We wouldn't read them as exactly the same agreement. And that's where the point is that you just read them consistently. But you don't read them as the same document. A subscription agreement has a fundamentally different meaning than the membership agreement. A subscription agreement sets forth, all right, this is the terms of how you're buying the interest. A membership agreement is how you govern it. And, in fact, that's why they put in a different document as the subscription agreement. They have separate subscription agreements all the time. And if you wanted to have them all as one agreement, what you do is what ATSI did. They've pointed to ATSI. ATSI said, no restrictions, promises, warranties, or undertakings other than those set forth or referred to herein. This agreement, the securities purchase agreement, the escrow instructions, the preferred shares, and the warrants. That's how you refer to other agreements. That's how you bring them all in together. That wasn't done here. The merger clause makes that clear. It cuts it off. It says this agreement, just the LLC agreement, is the LLC agreement. It blocks it off. And I think the Supreme Court of the United States used language in an analogous context, right versus universal, 525 U.S. at 81. There was a reference to employment laws and discrimination laws in the agreement. And Justice Scalia, in his opinion, pointed to the fact that there was a merger clause. And he said, no, there's a merger clause in this agreement that says this is the entire agreement and anything not stated herein is not part of the agreement. Right versus universal, we think, compels this result that you can't bring this in. Also, the Gildor case by Vice Chancellor Strine, we think, also holds that, which is you had two agreements, a stock purchase agreement and another agreement. And he said the fact that there's one agreement reference in the merger clause means they're separate. Thank you. Thank you for your time, Your Honor. Thank you both. We'll reserve decision.